NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                      :
  DOLORES COCHRAN,                    :
                                      :   Civ. No. 02-3950 (WGB)
       Plaintiff,                     :
                                      :
  v.                                  :   O P I N I O N
                                      :
  JO ANNE B. BARNHART,                :
  COMMISSIONER OF SOCIAL SECURITY,    :
                                      :
       Defendant.                     :
                                      :
_____ :


APPEARANCES:

Marc A. Grodsky, Esq.
168-25 Jamaica Avenue, Suite 203
Jamaica, New York 11432
     Attorney for Plaintiff

Christopher J. Christie
United States Attorney
By: Anthony J. LaBruna, Jr.
Assistant U.S. Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
     Attorney for Defendant

-1-

BASSLER, DISTRICT JUDGE:

Plaintiff, Dolores Cochran, ("Cochran"), age 53, brings this action pursuant to 42 U.S.C. § 423 and § 1383(c)(3) of the Social Security Act.[1]  Cochran appealed to the United States District Court for the District of New Jersey on August 14, 2002, following denial of her request for review by the Appeals Council on June 14, 2002.  Cochran requests that the Court reverse or remand the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  For the reasons set forth in this Opinion, the Commissioner's decision is **affirmed.**

I.   BACKGROUND

Cochran worked in her home as a provider of child day care services for the Child and Family Resources Agency of the State of New Jersey from 1994 to 1997 and again in 1999. (Tr. 179-180). Cochran filed applications for DIB and SSI on March 9, 2000, alleging disability as of April 15, 1989[2] (Tr. 42; 167) because of pain in her lower back that radiates into her legs (Tr. 97; 101;

---

[1] Cochran is represented by Marc A. Grodsky Esq.

[2] Cochran's Application for Benefits forms were amended to reflect an onset of disability date of November 15, 1997 at the hearing conducted by the Administrative Law Judge ("ALJ") on March 26, 2001 at the Newark, New Jersey Social Security Administration Office of Hearings and Appeals.  (Tr. 197).

126; 184) and in her arms (Tr. 184) following a December 30, 1996 motor vehicle accident in which the automobile that she was driving was struck in the rear by another automobile. (Tr. 92; 95). Cochran asserts that since the accident the pain is so severe that it prevents her from performing the activities associated with her job as a provider of child day care services, (Tr. 179) and housework, as well as the daily living activities of lifting, sitting, standing, sleeping, and lying down. (Tr. 72; 74; 76; 90).

Cochran was notified by a determination dated May 17, 2000 that her applications were denied (Tr. 30) based on the initial review conducted on May 15, 2000 (Tr. 171). Cochran was also notified by a determination dated August 31, 2000 that her request for reconsideration filed July 5, 2000 (Tr. 34) was reviewed and denied on August 24, 2000 (Tr. 172). Cochran requested a hearing before an ALJ on September 27, 2000 (Tr. 41), after which the ALJ found that Cochran was not disabled because she is capable of performing her past relevant work as a provider of child care. (Tr. 11 - 24). Specifically, the ALJ made the following findings:

1. The claimant met the disability insured requirements on November 15, 1997, her onset date, and continued to meet them through June 30, 1998.

2. The claimant has not engaged in substantial gainful work activity since November 15, 1997.

3. The medical evidence establishes that the claimant has degenerative disc disease at L4-5 and L5-S1, which are severe impairments. The testimony of the medical expert was a key factor in making this finding.

4.  The claimant does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The factors necessary to meet or equal the requirements of any listing, including 1.05C, are not present. The testimony of the medical expert was a key factor in making this finding.

5.  The claimant's nervousness has no effect on her activities of daily living, her social functioning or her concentration. She has never experienced decompensation in a worklike setting.

6.  For reasons set out more fully in the rationale of the decision, the claimant's subjective complaints, as they relate to her ability to perform work, are not fully credible (SSR 96-7P; 20 C.F.R. §§ 404.1529 and 416.929).

7.  The claimant has a residual functional capacity for a full range of light work, which requires her to lift, carry, push or pull no more than 20 pounds occasionally and 10 pounds frequently; and to sit, stand or walk up to a total of six hours each per eight-hour workday.

8.  Given the claimant's residual functional capacity, the claimant is able to perform her past relevant work as a daycare provider, as she previously performed it.

9.  The claimant is not disabled, as defined in the Social Security Act, at any time since November 15, 1997 (20 C.F.R. §§ 404.1566 and 416.966).

II. STANDARD OF REVIEW

A court may review the factual findings of the Commissioner in disability cases to determine whether "substantial evidence" supports the Commissioner's finding that there is no disability. 41 U.S.C. § 405(g); see also Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994)). Substantial evidence is defined as "more than a mere

scintilla" and "such relevant evidence as a reasonable mind might accept as adequate," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Plummer, 186 F.3d at 427. This substantial evidence "shall be conclusive" and must be upheld, even if the record contains information that could support a different conclusion. 42 U.S.C. § 405(g); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993); Alexander v. Shalala, 927 F. Supp. 785, 791 (D.N.J. 1995); see also Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Accordingly, the record in this case must be analyzed to assess whether substantial evidence supports the Commissioner's finding that Cochran is not eligible for DIB.

The Commissioner applies a five-step sequential process to determine whether a person is eligible for DIB. 20 C.F.R. §§ 404.1520, 416.920. If a finding of a disability or non-disability can be found at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a), 416.920(a). The Claimant bears the burden of proof and must provide medical and other evidence to the Commissioner in order to pass the first four steps of the sequential analysis. 42 U.S.C. § 423(d)(A), incorporated by 42 U.S.C. § 1382c(a)(3)(G); see Adorno, 40 F.3d at 46; Ferguson v. Scweiker, 765 F.2d 31, 36 (3d Cir. 1985); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). The

burden of proof only shifts to the Commissioner if the analytical process succeeds to the fifth and final step. See Ferguson, 765 F.2d at 36; Rossi, 602 F.2d at 57.

The Commissioner starts the analysis by determining whether the claimant currently is employed in a "substantial gainful activity," 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the Commissioner proceeds to the second step to assess whether a "severe impairment" significantly limits the claimant's ability to work. 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). 20 C.F.R. §§ 404, 1520(d), 416.920(d). If the claimant meets the listed criteria, then the Commissioner must conclude that the claimant is disabled and entitled to benefits, and the review ends. Id. If the claimant's impairment is not in the Listing of Impairments, the Commissioner proceeds to step four to consider whether the claimant has the residual functioning capacity to meet the demands of her past employment. 20 C.F.R. §§ 404.1520(e), 416.920(e). Finally, if the claimant cannot perform her past work, the Commissioner has the burden of proving that there is other substantial gainful employment that the claimant could perform. 20 C.F.R. §§ 404.1520(f), 416.920(f).

III. ANALYSIS

Cochran argues that the ALJ erred in making his determination for two reasons. First, Cochran contends that the ALJ was required

to give serious consideration and great weight to her complaints of pain and that the ALJ failed to do so.

Second, Cochran argues that the ALJ failed to apply the proper standard in making his determination because his on-the-record statements reveal that he believed that an award of benefits would be for Cochran's lifetime, without periodic review to determine whether or not she remained disabled from working and eligible to continue to receive DIB.  Cochran contends that the ALJ's incorrect belief resulted in his application of an erroneous standard which resulted in denial of benefits.

The Court finds that, in making the determination that Cochran's impairments are not disabling, the ALJ gave serious consideration and appropriate weight to Cochran's subjective allegations of pain and limitation.  The Court also finds that the ALJ applied the proper standard in making his decision to deny benefits to Cochran.

> A. <u>The ALJ Gave Serious Consideration and Appropriate Weight to Cochran's Subjective Allegations of Pain and Limitation in Making the Determination that Cochran's Impairments Are Not Disabling.</u>

The ALJ has a duty to develop a full and fair record in social security cases. <u>Ventura v. Shalala</u>, 55 F.3d 900 (3d Cir. 1995). Cochran contends that she is disabled by severe and debilitating

back pain but that the ALJ failed to give this serious consideration and great weight in making his determination. It is clear from the ALJ's decision that he understood what was required of him in his decision-making process and systematically considered the evidence before him on the record. There is ample evidence in the ALJ's opinion that he properly evaluated Cochran's allegations of pains and limitation (Tr. 17-18), as well as the objective medical evidence and the statements of her chiropractic physicians.

The ALJ correctly states that in assessing Cochran's credibility that he is required to look at several factors, including her daily activities; the location, duration, frequency, and intensity her pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; persistent treatment history; treatment, other than medication, for relief of pain; measures, other than treatment, for relief of pain or other symptoms; functional limitations and restrictions; and prior work records and efforts to work.

The ALJ's opinion recognizes that Cochran states that she is in constant pain, but that her claim is contradicted by the objective medical evidence reported my Dr. Mylod and Dr. Cohen and by Cochran's own statement. The opinion considers that surgery was not recommended to relieve Cochran's back pain; instead, a conservative treatment program, including home exercises and the

-8-

pain relief medication, Relafen, were administered.  The ALJ noted that, although Cochran claims that the pain was constant and severe, Cochran did not ask to be prescribed stronger pain relief medication, nor did Cochran have the epidural injections that were recommended by the orthopedic specialist, Dr. Cohen.  The ALJ also considered Cochran's statement to Dr. Cohen in April 2000 that the therapies for were helping to relieve her back pain.

The ALJ also took into account that Cochran reported no subsequent injury that would cause additional pain and that she has not received treatment from a medical doctor to alleviate her pain since the settlement of her law suit in May 2000.

In addition to Cochran's complaint of back pain, the ALJ's opinion addressed her additional complaints that she suffered from headaches, nervousness, and high blood pressure.  The ALJ noted that Cochran stated that the prescription drug, Paxil, gave her relief from her headaches and that her complaints of nervousness did not affect her daily activities, her social functioning, her concentration, or her work.  Considering Cochran's complaint of high blood pressure, the ALJ found that, not only was there no record of such a diagnosis, or treatment with Norvasc, but that her cardiac functioning following a stress test in March 1999 was normal.

The ALJ considered Cochran's claim that she was unable to do little, if any, physical activity, including minimal household

chores. Weighing her claim against the objective medical evidence on the record, the ALJ found that, although Cochran had been diagnosed in February 2000 with degenerative disc disease at L4-5 and L5-S1, Dr. Cohen found her competent to return to work; in June 2000, Dr. Cohen restricted her physical activity to preclude only heavy lifting. Relying on the determination of the agency's medical expert, Dr. Morelos,[3] the ALJ found that Cochran was capable of performing a full range of light work, including her former duties as a provider of child care services.

Although the ALJ considered the opinion of Cochran's chiropractor, Dr. Gervis, that Cochran was not able to perform any physical activity, the ALJ accorded Dr. Gervis' opinion minimal weight because it was inconsistent with the objective medical evidence presented.[4]

In light of the above, the ALJ properly considered the

---

[3] Jose F. Morelos, M.D., is a medical expert who reviewed the evidence for Disability Determination Services. In Dr. Morelos' medical opinion, Cochran was able to push, pull lift and carry up to thirty pounds occasionally and fifteen pounds frequently; in addition, she was able to sit, stand and walk up to six hours out of an eight hour work day with occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Morelos concluded that the severity or duration of the symptoms is disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairments. (Tr. 151-157).

[4] Under 20 C.F.R. §§ 404.1513 and 416.913, although a chiropractor is not an acceptable source to establish medically determinable impairments, the ALJ has discretion to consider the opinion of a chiropractor regarding the severity of the impairment and how it affects work ability.

evidence put forth before him and concluded, based on that evidence, that Cochran was is able to perform her former work as a provider of child day care services.

### B. The ALJ Applied the Proper Standard in Making His Decision to Deny Benefits to Cochran.

Plaintiff alleges that the ALJ failed to apply the proper standard in rendering his evaluation because of certain personal opinion statements made by the ALJ. Plaintiff specifically points to the exchange on the transcript at 196 between Plaintiff's counsel and the ALJ where the ALJ stated, "we're talking about providing benefits for life" and "[Social Security representatives] don't review anything. They reviewed them because Congress went after them and said review them, and then that's the end of that. They haven't reviewed anything since."

In this case, the ALJ's personal opinion of the probable or possible duration of benefits is of no consideration. The determination of the ALJ was that Cochran was not disabled from working in her prior employment as a provider of day care services based on the evidence presented at the time of the hearing.

As noted above, the ALJ is required to follow, and did follow, the five step process in making his determination. Within that required framework, he found that the Plaintiff's subjective testimony regarding the severity of her symptoms and her physical limitations simply was not supported by the objective medical

evidence supplied by her medical doctors.

The ALJ considered the opinions of the medical doctors and the chiropractor who evaluated Cochran, as reported in Exhibits 5E, 3F, 6F, 7F, and 10F.  Dr. Seidenstein, orthopedic surgeon, described Cochran as "a person in no acute distress" and with "no neurological impairment."  He found her capable of walking on her heels and toes; he also found that motor strength to her lower extremities was intact.  Dr. Shariati, who discharged Cochran following a brief admission to Morristown Memorial Hospital for chest pain, found the results of Cochran's extremity examination and stress test to be normal.  Dr. Lazar, who conducted a lumbar MRI scan on Cochran, found mild degenerative disc disease, but no evidence of significant central stenosis.  Dr. Cohen, an orthopedic specialist who reviewed Dr. Lazar's MRI scan, recommended conservative treatment, home exercises, the pain medication, Relafen, and epidural injection.  Dr. Cohen also expressed doubt that Cochran's degenerative disc disease would be sufficient justification for disability benefits.  The ancillary records from Family Health Center of Morristown where Cochran sought treatment for headaches were also considered by the ALJ in making his determination.

The ALJ also considered the testimony of the expert witness, Dr. Mylod, whose review of Cochran's medical records revealed no significant clinical neurological findings.  Dr. Mylod also reported finding no evidence of further medical treatment after

-12-

Cochran received a settlement from her auto accident lawsuit.

Against this objective medical evidence, the ALJ evaluated Cochran's claims of debilitating back pain, so severe that it prevents her from engaging in any kind of physical activity. Cochran reported to Dr. Dr. Cohen that his conservative therapies were helping. She did not demand a stronger prescription medication to ease the pain nor did she receive the epidural injections for pain that were recommended by Dr. Cohen. Cochran did not report any further injury that would have exacerbated her pain. She discontinue medical treatment following the settlement for her automobile accident law suit.

Under C.F.R. § 416.913(d)(1), the ALJ has the discretion to consider other sources of information in addition to the acceptable medical sources of licensed medical or osteopathic doctors. Although the ALJ considered Dr. Gervis' records and opinion, he gave these decreased weight because they conflicted with the objective medical evidence.

Considering the objective evidence, the subjective evidence and the discretionary evidence, the ALJ concluded that Cochran's allegations of incapacitating back pain were not credible and that Cochran was not disabled from performing the duties of her employment as a provider of child day care services.

IV.  CONCLUSION

For the reasons set forth in this opinion, this Court **affirms**

-13-

the Commissioner's decision to deny Plaintiff Disability Insurance Benefits and Social Security Income Benefits.

An appropriate Order accompanies this Opinion.


DATED:    October 14, 2005



                                   /s/ William G. Bassler
                                  William G. Bassler, U.S.S.D.J.